No. 57058.—Ratsey & Lapthorn, Inc., and Daniel F. Young, Inc. v. United States, protest 168246–K (New York).

JOHNSON, Judge: The merchandise at issue in this case consists of certain sailcloth imported from England. Duty was assessed thereon by the collector at the rate of 40 per centum ad valorem under paragraph 923 of the Tariff Act of 1930, plus 5 cents per pound under paragraph 924, as amended by the General Agreement on Tariffs and Trade (T. D. 51802). The rate at which the collector assessed duty is not in dispute. The importer claims that the goods are of American manufacture and, consequently, are entitled to an exemption from the payment of duty under the provisions of paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

At the trial, the president of the importing company testified that the importer is engaged in the business of making sails for yachts; that during the war, its factory was short of labor but had plenty of material on hand while a firm in England of the same name, and somewhat of a parent company, although not directly connected, was short on materials and at the same time did not have the same volume of business; and that a hundred suits of sails for lightning-class boats were ordered, 3,000 yards of 5-ounce 28½-inch Egyptian cotton, manufactured by the Wamsutta Mills in New Bedford, Mass., being shipped to the English firm to be used in the manufacture of the sails.

When the first 50 suits of sails were received, the importer discovered that they had been made on a straight-stitch machine and orders went to England to stop work on any additional sails. According to the witness, it was explained by the exporter that the sails had been made upon such a machine because the exporter's zigzag machines had been destroyed by the blitz. Upon receipt of that knowledge, the importer issued orders to the English firm to return the remainder of the material.

The witness further testified that in the United States a zigzag stitch is exclusively used in making cotton sails for the reason that when the cotton stretches, the zigzag stitches stretch with the cotton on the length of the seam, whereas there is no elasticity to the straight stitch, and such stitches are apt to pop and break; and that the English firm, as well as his own, had never used a straight-stitch machine in making sails prior to the instance in question.

The witness further testified that his company would rather have the returned material in 28½-inch widths, as exported, but since it was split it "would have been all right if it had been sewn with the zig-zag stitch instead of the straight stitch." However, in the condition returned, the witness stated that the merchandise neither had been advanced in value nor improved in condition; that although the width of the cloth was not undesirable, the false seam in the middle

made by means of straight stitching was objected to; and that the factory tried to remove the stitches but found that the needle holes remained and could not be covered up.

The witness further testified that the 50 suits of sails which were imported and which were manufactured with the straight stitching, rather than the zigzag stitch, were finally disposed of at a great discount. The witness admitted, however, that they were not sold at a loss.

A sample of the cloth in question was admitted in evidence as exhibit 1 showing the straight-stitch seam down the middle. This stitching is shown to have been made on a portion of the cloth folded over and it was not sewn in order to join two pieces together. A sample of the same cloth showing where the straight stitch had been removed and the material sewn with the zigzag stitch was admitted in evidence as illustrative exhibit 2. The needle holes made by the straight stitching plainly show on the cloth between the zigzag stitching.

The evidence is uncontradicted that not only was the cloth not advanced in value or improved in condition, but it was actually in a worse condition than when previously exported from the United States, and is still on hand at the company plant on City Island, attempts having been made to sell it without avail. It was agreed between counsel that all the pertinent regulations attending free entry had been complied with. In other words, it is admitted that the merchandise is American products returned and that no drawback had been paid. The only question before the court is whether or not the condition of the cloth as returned warrants it being classed as having been advanced in value or improved in condition by any process of manufacture or other means.

The Government contends that the returned merchandise has been advanced in value and improved in condition (despite the fact that in its returned condition it could not be used to make a first-class article), for the reason that it was advanced towards its ultimate use and dedicated for use in the manufacture of sails. The importer contends that the same cotton cloth exported was returned to the United States but in a worse condition than when it was shipped. When the merchandise was shipped to England, it was adaptable for use in the manufacture of sails, but upon its return, it was not so adaptable and the importer has been unable to dispose of it.

In the opinion of the court, an importer of returned American goods would not be required to expend time and effort upon the same in an attempt to manufacture from spoiled material an unsatisfactory article, and one whose salability at a profit would be a matter of conjecture, when the goods have been returned to the United States in such condition that a satisfactory article, in keeping with the quality of merchandise the importer produces, could not be produced therefrom.

For the reasons stated, judgment will be rendered in favor of the plaintiffs directing the collector to reliquidate the entry and refund all duties taken upon said sailcloth.